**FILED & ENTERED**

**AUG 26 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Salomon Llanos<br><br><br>Debtor(s).<br><br>Salomon Llanos<br><br>Plaintiff(s),<br>v.<br><br>Cascade Funding Mortgage Trust 2017-1,  Cascade Funding Mortgage Trust 2017-1 and Statebridge Company, LLC, Citigroup Inc.,  Statebridge Company LLC<br><br>Defendant(s). | CHAPTER 13<br><br>Case No.:  1:18-bk-12557-MT<br>Adv No:    1:19-ap-01036-MT<br><br>**MEMORANDUM RE: MOTIONS TO DISMISS**<br><br>Date:          June 26, 2019<br>Time:         1:00 p.m.<br>Courtroom:  302 |

## Background

Salomon Llanos ("Debtor" or "Plaintiff") purchased the real property located at 23741 Burton St., Canoga Park, CA 91304 (the "Property") in June 1992. In July 2007,

-1-

Debtor obtained a second position mortgage from Citibank, N.A. (the "Mortgage"). The alleged actions by Citibank and the subsequent transferees and servicers of the Mortgage form the basis for this adversary action.

Debtor fell behind on the Mortgage on the Mortgage beginning around 2014. On October 4, 2016, Debtor received a letter (the "Reinstatement Letter") from National Default Servicing Corporation on behalf of Citimortgage, Inc. (Citimortgage apparently held the mortgage after Citibank). The Reinstatement Letter stated that Debtor could reinstate his mortgage loan by paying a total of $86,073.10 to cure the default. Debtor made a payment of $86,073.10 on October 10. Debtor alleges that Citibank failed to apply the reinstatement amount to arrears, and instead applied the payment to principal.

The Mortgage was subsequently purchased by Waterfall Victoria Grantor Trust II around May 2017.[1] While not referred to in the Complaint, the Court takes judicial notice of the Assignment of Deed of Trust dated September 26, 2017, transferring ownership of the Mortgage from Waterfall Victoria to Cascade Funding, LP, Series I. ECF Doc. 7, P. 35. That same day, the Mortgage was transferred to Cascade Funding Mortgage Trust 2017-1 ("Cascade"), which is named as a defendant in this case. ECF Doc. 7 P. 38.[2] Cascade is the current holder of the Mortgage, while defendant Statebridge Company LLC ("Statebridge") is the servicer of the Mortgage. The third and final named defendant is Citigroup, Inc. in connection with actions taken by Citibank, N.A, and Citimortgage, Inc. ("Citi").[3] Citi and Cascade/Statebridge[4] have filed Motions to Dismiss

---

[1] There was an additional unusual assignment on April 7 that was one of the bases of Debtor's quiet title claim, but that claim has been withdrawn and that assignment is not relevant to the remaining causes of action.

[2] The Court takes judicial notice of this document as well.

[3] The exact relation of Citi to CitiMortgage and Citibank, N.A. is not explained, but Citi has appeared and seems to acknowledge that it is the appropriate party in interest.

[4] The Court will refer to the Motion to Dismiss filed by Statebridge, but Statebridge's attorneys also represent Cascade.

the adversary action under F.R.C.P. 12(b)(6). The Court will address both motions in this memorandum.

### Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008) (*quoting* Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)).

In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations as true. Johnson, 534 F.3d at 1122; Knox v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001). On the other hand, the court is not bound by conclusory statements, statements of law, and unwarranted inferences cast as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

### Analysis

The complaint contains ten claims against some or all the defendants. Many of those claims, however, have been voluntarily dismissed.

#### Debtor is not Judicially Estopped from Asserting Claims

Citi argues that Debtor should be judicially estopped from asserting claims against Citi or the other defendants because Debtor provided for Cascade/Statesbridge's claim in the now-confirmed chapter 13 plan but made no mention of the litigation claims in Debtor's schedules. Judicial estoppel precludes a party from gaining

an advantage by taking one position and then seeking a second advantage by taking an incompatible position. <u>Wagner v. Professional Eng'rs in Cal. Gov't</u>, 354 F.3d 1036, 1044 (9th Cir. 2004). Judicial estoppel does not apply here because Debtor filed an objection to Cascade's claim very early in the case. Debtor's schedules filed with the petition indicate that he disputed the claim. Furthermore, while Debtor's schedule B did not initially reveal the litigation claims, the schedules have been amended. The plan was confirmed despite the dispute over Cascade's claim because Debtor agreed to provide for 100% of Cascade's claim with the understanding that Debtor would file an adversary proceeding. Furthermore, failure to schedule the claims and their value on Debtor's schedules did not affect the best interest analysis under § 1325(a)(4). Finally, Debtor does not appear to have received any advantage by failing to schedule the litigation claims.

<u>Debtor's RESPA and FDCPA Claims are not Preempted by Bankruptcy Law</u>

Citi argues that Debtor's claims under the Real Estate Settlement Practices Act ("RESPA") and Fair Debt Collection Practices Act ("FDCPA") are preempted by bankruptcy law, citing <u>Ameriquest Mortgage Co. v. Nosek (In re Nosek)</u>, 354 B.R. 331 (D.Mass.2006). The court in <u>Nosek</u> found that RESPA and the Bankruptcy code provide conflicting procedures and remedies, and the Debtor had invoked both. <u>Id.</u> at 339. Other Courts have disagreed with <u>Nosek</u> and found that debtors in bankruptcy cases may assert RESPA claims at least in certain circumstances where the procedures of RESPA and the Bankruptcy Code do not conflict. <u>Payne v. Mortgage Elec. Registration Sys., Inc. (In re Payne)</u>, 387 B.R. 614 (Bankr.D.Kan.2008); <u>Jacques v. U.S. Bank (In re Jacques)</u>, 416 B.R. 63, 73 (Bankr. E.D.N.Y. 2009)(overview of cases).

As stated in Jacques, the issue is not "preemption" under the supremacy clause of the constitution because there are no state law claims at issue. Id. at 71. The relevant issue raised by the Nosek case is which remedial scheme is applicable in cases where the duties imposed on creditors by RESPA conflict with the duties imposed on creditors by the objection to claim procedures in the Bankruptcy Code.

> The facts of this case show how the overlap of these procedures may occur. Nosek sent what the Bankruptcy Court found to be a qualified demand letter under RESPA on July 23, 2004. (R. at 57.) Under RESPA, and outside of the bankruptcy proceeding context, Ameriquest would have had 20 days to reply to this demand letter. 12 U.S.C. §§ 2605(e). Nosek also filed with the Bankruptcy Court a Motion to Determine Amount of Liens on August 11, 2004. (R. at 142–45.) This motion was filed before the RESPA safe harbor time-frame had expired and sought to have the Bankruptcy Court determine the amount owed.

In re Nosek, 354 B.R. at 339. One notable difference between Nosek and the instant case is that Citi does not have a claim in this bankruptcy, so there is no issue of conflicting duties or deadlines for qualified written requests under RESPA and responses to claims objections under the Bankruptcy Code. The Court does not agree with Citi's implication that alleged violations of RESPA and FDCPA become non-actionable once a borrower files bankruptcy. The Court also notes that, as a number of cases cited by Debtor indicate, Nosek is not universally accepted. Nor is Walls v. Wells Fargo Bank, N.A. on point here. 276 F.3d 502, 510 (9th Cir. 2002)(holding that violation of discharge injunction of 11 U.S.C. § 524 must be pursued by civil contempt proceedings, and cannot be pursued in a simultaneous action under the FDCPA).

### First Cause of Action

Debtor's first claim is under the RESPA against all defendants for violations of 12 U.S.C. § 2605(k)-(m) and related regulations 12 C.F.R. § 1024.37 for alleged

wrongdoing in connection to force-placed insurance. This claim was voluntarily dismissed as against Statebridge and Cascade, ECF. Doc. 17 12:13-19, but remains as against Citi.

Title12 U.S.C. § 2605(f) creates a cause of action for individuals to recover A) actual damages caused by violations of that section, and B) up to $2,000 in damages in cases where a pattern or practice of noncompliance is shown. Debtor has alleged that Citi violated 12 U.S.C. § 2605 by purchasing unnecessary force-placed insurance and charging Debtor for that insurance "on at least three (3) occasions." Complaint, ¶ 9. Debtor alleges that, in 2016, Citi purchased hazard insurance for Debtor's property even though Debtor already had insurance in place. Id. at ¶ 79. Debtor allegedly contacted Citi and informed it that the property already had insurance. Citi then allegedly responded in October 2016 that it had cancelled two insurance policies and stated that it would refund Debtor's account if any refund was due. Id. at ¶ 81. Debtor alleges that Citi has not refunded or credited Plaintiff's account for the force-placed insurance. Id. at ¶ 82. Shortly afterwards, Citi allegedly improperly purchased force-placed insurance for the property once again. Id. at ¶ 83. While Citi again canceled the insurance, it allegedly has not refunded Debtor for the costs of the force-placed insurance. Id. at ¶ 86.

Citi argues that Debtor's first cause of action fails because Debtor has failed to allege sufficient facts for the Court to determine when the insurance policies were issued—specifically, whether the insurance policies were issued before January 10, 2014, the date that 12 U.S.C. § 2605(k) went into effect. Citi also argues that the specific dates that the policies were implemented are also relevant to the statute of limitations which is three years for a violation of § 2605. 12 U.S.C. § 2614. Debtor responds that the declaration submitted by Kristin Fawns (ECF Doc 14) admits that

some of the policies at issue were cancelled around October 17, 2016—well after the statute of limitations had expired and after 12 U.S.C. § 2605(k) went into effect. Citi replies that Debtor conveniently omits reference to the portion of Ms. Fawn's declaration that indicates that all amounts paid under the force-placed insurance have been refunded, and that two of the force-placed insurance policies were in fact put in place before 2014.

      First, neither the statement by Ms. Fawns nor Citi's factual allegations regarding the dates that the policy was implemented can be considered for purposes of this 12(b)(6) motion. Ms. Fawns' statement that the funds have been reimbursed contradicts allegations in the complaint at ¶ 82, which the Court assumes to be true for purposes of this motion. The complaint also alleges that force-placed insurance was purchased by Citi in 2016, Complaint at ¶ 79, which is clearly after 12 U.S.C. § 2605(k) went into effect. While paragraph 79 of the complaint is ambiguous as to whether Citi purchased force-placed insurance before or after the statute of limitations window, which it argues is April 1, 2016, the complaint also alleges that Citi wrongfully purchased force-placed insurance shortly after October 12, 2016. Id. at ¶ 83. This is clearly within the three-year limitations period.

      The Court agrees with Debtor that the factual arguments raised by Citi are best reserved for summary judgment. Debtor has stated a plausible claim under 12 U.S.C. § 2605 against Citi for improperly purchasing force-placed insurance on the Property.

Second Cause of Action

      Debtor's second claim is against Statebridge for violation of RESPA regulation 12 C.F.R. § 1024.35(d) regarding failure to acknowledge receipt of Debtor's first "Notice of Error" letter ("NOE #1").

Under 12 C.F.R. § 1024.35(d), a servicer must acknowledge a Notice of Error letter within five days of receipt. 12 C.F.R. § 1024.35(d). A servicer then has thirty days from the receipt of the letter to adequately investigate and respond to a borrower in writing. The response must state that no error has been discovered or that the error has been remedied. 12 C.F.R. § 1024.35(e). A servicer may also request a fifteen-day extension if the request is made within thirty days of receiving the Notice of Error letter. 12 C.F.R. § 1024.35(e)(3)(ii).

Debtor sent Statebridge NOE #1 on October 2, 2018. Complaint ¶ 88. Debtor alleges that Statebridge acknowledged in a letter dated November 19, 2018 that it had received NOE #1 on October 10, 2018. Complaint ¶ 89. Statebridge requested an additional fifteen days to respond.

Debtor asserts that Statesbridge's failure to acknowledge its receipt of NOE #1 within five days of receiving it on October 10 is a violation of 12 C.F.R. § 1024.35(d). The complaint states that Statesbridge had until October 17, 2018 to acknowledge receipt of NOE #1, but it did not do so until November 19.

Statesbridge asserts in its Motion to Dismiss that it sent an acknowledgement letter on October 11, 2018, well within the statutory timeframe. Statesbridge filed a declaration by Kristin Fawns to support this allegation and attaches a number of documents including what it alleges is the acknowledgment letter sent to Debtor on October 11, 2018. There are several issues with Statesbridge's defense.

Generally speaking, courts consider only the contents of the complaint when deciding a motion under FRCP 12(b)(6). However, a court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss

into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Courts can also consider evidence on which the complaint "necessarily relies" if 1) the complaint refers to the document; 2) the document is central to the plaintiff's claim; and 3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

Ms. Fawns' declaration indicating that Statebridge sent an acknowledgement letter on October 11,[5] Fawn Dec. ECF 14 ¶ 20, is outside the scope of what the Court may consider on this motion to dismiss. The alleged October 11 acknowledgment letter is equally outside the Court's consideration here as it does not fall into one of the exceptions described above. Debtor's opposition points out that the letter is dated a week before NOE #1 was even sent to Statebridge. Statebridge argues that the evidence shows that the letter was simply incorrectly dated. Courts do not weigh evidence in considering motions under FRCP 12(b)(6). Nor does the October 11 acknowledgment letter fall within the exception for documents upon which the complaint "necessarily relies" because the complaint does not refer to the aacknowledgment letter and Debtor seems to dispute its authenticity. At least two cases have found that a similar response under RESPA was not a document on which the complaint "necessarily relies" for purposes of a motion to dismiss under FRCP 12(b)(6). See Wood v. Nationstar Mortg., LLC, 2017 WL 3484664, at *4 (D. Or. Aug. 14, 2017)("Ocwen also attached a letter putatively sent in response to Plaintiffs' letter. This letter is not referenced in the SAC and is not central to plaintiffs' RESPA claim. For those reasons, the SAC does not 'necessarily rely' on the response letter and the Court does not consider it for purposes of this motion to dismiss."); Hopper v. Nationstar

---

[5] For purposes of identification, the letter at issue is located at Doc. 14 p. 25 of 111, and the date of the letter is stated as "September 26, 2018."

Mortg., LLC, 2016 WL 5339577, at *2 (D. Or. Sept. 20, 2016)("The Acknowledgment Letter is not directly referenced in the Complaint and the authenticity of the letter has been challenged by plaintiff. PL's Resp. in Opp'n at 5. For those reasons, the Complaint does not 'necessarily rely' on the Acknowledgment Letter and is not considered.").

The facts here mirror those in Wood and Hopper. Debtor filed a RESPA claim alleging that Defendant failed to adequately respond to a letter under RESPA. The Defendant then filed a motion to dismiss under FRCP 12(b)(6), attaching as evidence a response letter that allegedly satisfied the requirements under RESPA. In both of those cases, the court declined to consider the response as documents upon which the complaint "necessarily relied." Fundamentally, this is consistent with the purpose of a motion under FRCP 12(b)(6), which is not intended to resolve disputed facts, but to probe whether a complaint has facially stated a claim.

The Court must assume the truth of the allegations of the complaint, which asserts that Statebridge did not acknowledge receipt of NOE #1 until November 19, 2018. The Motion to Dismiss is DENIED as to the second cause of action.

### Third Cause of Action

Debtor's third claim is the similar theory as the second claim, but with respect to a Notice of Error letter sent to Statebridge dated February 12, 2019 and delivered February 19, 2019 ("NOE #3"[6]). Debtor claims that Statebridge has failed to respond to NOE #3 within thirty days of receipt, as required by 12 C.F.R. § 1024.35(e)(3)(i)(C). NOE #3 alleged errors with regards to three payments that Debtor made but were refused and reversed by Statebridge while Statebridge maintained that the account was in default. Complaint ¶ 92. Debtor received an acknowledgment dated Febraury 21,

---

[6] Cascade refers to this as the second Notice of Error letter, but the Court will use the nomenclature from the complaint.

2019, but allegedly has not received any response to NOE #3. Id. at ¶ 93. Statebridge stated that it received NOE #3 on February 19, 2019, which Debtor claims required Statebridge to respond by April 2, 2019.

In its Motion to Dismiss, Statebridge claims that it responded to Debtor with a letter dated March 12, 2019, explaining that two of the referenced payments were rejected for non-sufficient funds and one of the checks was accepted. Statebridge attaches copies of the response letter to the Declaration of Kristin Fawns in support of the Motion to Dismiss.

This argument by Cascade has the same deficiency as the response to NOE #1. Debtor questions whether the response to NOE #3 was actually mailed timely. The Court will construe this, combined with paragraph 140 of the complaint, as a claim that neither Debtor nor Debtor's counsel received the March 12 letter attached to Ms. Fawns' declaration. Cascade responds that Debtor is attempting to make a semantic distinction between the words "sent" and "mailed." That distinction is irrelevant here, as the Court must assume the truth of the allegation in paragraph 140 of the complaint that "[t]o date, neither Plaintiff nor Plaintiff's Counsel has received this response [to NOE #3]." Debtor's complaint does not "necessarily rely" on the March 12 response letter and Debtor appears to dispute its authenticity by questioning whether it was in fact sent to Debtor.

To be clear, if Debtor is attempting to play words games to avoid admitting that he received the March 12 response letter, the third cause of action will fail and Debtor may be subject to sanctions for making a false allegation in paragraph 140 of the complaint. The Motion to Dismiss is DENIED as to the third cause of action.

### Fourth Cause of Action

The Fourth claim alleges that Statebridge failed to acknowledge a Notice of Error sent by Debtor on February 20, 2019 ("NOE #4"[7]). Statebridge allegedly received NOE #4 on February 26, 2019 and was required to acknowledge its receipt by March 5, 2019. Complaint ¶ 151. Neither Debtor nor Debtor's counsel have received an acknowledgment of NOE #4. Complaint ¶ 154. Statebridge claims in the Motion to Dismiss that it sent an acknowledgment letter on February 27, the same day it received NOE #4, and sent a final response letter on March 22. Statebridge attaches copies of those letters to the declaration in support of the Motion to Dismiss. Again, Debtor seems to dispute the authenticity of the letter:

> Fawns does not testify how she verified this was mailed which coupled with the fact that Statebridge could have received NOE #4 on February 25, 2019 creates triable issues of fact whether the February 27, 2019 letter was actually mailed, let alone when it was created. At this initial pleading phase the Court must take the allegations of Plaintiff's Complaint as true. The evidence presented by Statebridge that it responded to NOE #3 is a question of fact that is not appropriate to address at this phase.

Opposition to Cascade MTD, ECF 17 15:14-22. The Court agrees with Debtor once again, but again warns Debtor that if he or his counsel in fact received the acknowledgment letter, the representation quoted above and in paragraph 154 of the complaint will be grounds for sanctions. The Motion to Dismiss is DENIED as to the fourth Cause of Action.

### Fifth Cause of Action

The fifth cause of action asserts that all defendants have failed to <u>properly</u> respond to the various notices of error under 12 C.F.R. § 1024.35(e). First, the court will

---

[7] Cascade and Statebridge refer to this a the "third notice of error" in their motion to dismiss, but the Court will use the nomenclature from the complaint.

note that the Court overruled Debtor's objection to the claim of Cascade/Statebridge. BK ECF Doc. 67.[8] However, that claim objection does not seem to bear upon the fifth cause of action, which focuses upon whether defendants' investigation and responses to the various notices of error were sufficient. The Court will address Cascade/Statebridge's Motion first.

*Cascade/Statebridge*

Debtor's fundamental dispute with respect to the Mortgage is that the defendants maintained that the that the mortgage was significantly in arrears, even after Debtor paid $86,073.10 pursuant to a reinstatement quote around October, 2016. NOE #3 is attached to the declaration of Kristin Fawns as exhibit D, and the Court will consider it as a document upon which the complaint "necessarily relies" as 1) the complaint refers to the document; 2) the document is central to the plaintiff's claim; and 3) no party

---

[8] The Court will take judicial notice that the initial proof of claim filed in the lead bankruptcy case was, as Cascade admitted, incorrect. The initial proof of claim allegedly failed to take into account a change in the payments due beginning around September 1, 2017 which increased the payments from "interest only" to "principal and interest" pursuant to section seven of the note, which reads as follows:

> 7. **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances, which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or 1/240th of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an Early Closure Release Fee as provided for in Section 5 above. Loan Advances may not be drawn to make payments on the Account, nor may payments be drawn on business accounts. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.

The "Draw Period" under the note is 10 years and 25 days from the date of the agreement, which was July 17, 2007. The Draw Period, during which the borrower needed only pay Finance Charges, therefore ended in August 2017. Beginning in September 2017, the Repayment Period, defined as the twenty years following the Draw Period, payments under the loan increased to interest plus 1/240th of the principal balance. In other words, Statebridge is correct that Debtor was liable for principal and interest payments beginning around September 2017. The Court ruled against the Debtor on the objection to claim because Debtor had not provided any clear grounds or theory for disputing the claimed arrears, but noted that the Debtor could bring another objection to claim if he could articulate the grounds more clearly.

questions the authenticity of the copy attached to the declaration. Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d at 998. NOE #3 states that Debtor stopped making payments after Statebridge 1) continued to maintain that the loan was in default by around $50,000, and 2) refused to accept three payments around June and July 2017. This is consistent with the allegations of the complaint at ¶ 65-72. Furthermore, it is consistent with the billing statements attached to NOE #3, which show that Statebridge asserted that the loan was in default $50,709.95 as of June 26, 2017 and $50,827.63 as of July 26, 2017.

These billing statements are significant because they seem to show that Debtor was several years behind on payments, despite having reinstated the loan less than eight months beforehand in October 2016. Cascade represented to this Court in connection with the objection to its claim that the entire delinquency Debtor complained of was accrued *after* April 2017, when Statebridge began servicing the loan. Neither accounting attached to the original or amended proofs of claim reflect that Statebridge asserted that Debtor was delinquent $50,000 in June 2017. One Statebridge employee allegedly informed Debtor in February 2018 that Citi "had erroneously applied the payment to principal rather than to the negative balance."

Statebridge's response to NOE #1 states that "[i]t appears that on April 16, 2018 Statebridge did adjust the payment to satisfy Mr. Llano's [sic] requests regarding how the funds from the prior reinstatement were applied to his account." Reviewing the accounting provided in response to NOE #1, Statebridge added $47,586 to the principal of Debtor's loan on April 16. The accounting does not show the amount overdue, as the billing statement does, but the Court assumes the truth of Debtor's assertion in NOE #3 that this adjustment in April 2018 corrected the issue of the pre-transfer delinquency.

Debtor asserts that whether Statesbridge's response to NOE #1, NOE #2, and NOE #3 are insufficient is a question of fact that should not be resolved at the motion to dismiss stage. Having reviewed the accountings provided by Statebridge, the Court agrees. Statebridge's responses were evasive and failed to address the underlying issue, which involved misapplication of a payment by the previous loan servicer. Statebridge's reply to the Motion to Dismiss states "there was no need to Statebridge to include additional history from the prior servicer, as the payment history provided began prior to the date of default, and clearly demonstrated the basis of Plaintiff's default." ECF Doc. 20 7:6-8. The problem with this statement is that there are fundamentally two defaults at issue: the first caused by servicer error as reflected in the June 26, 2017 billing statement, and the second caused by Debtor ceasing to pay the mortgage in response to the servicer error. Statebridge wants to focus on the second default, which is clear from the accountings provided to both the Debtor and the Court. The servicer error is omitted from all the accountings. Looking at the accountings, one would not know that Statebridge was telling Debtor that he was $50,000 in arrears in June 2017. Statebridge's Motion to Dismiss is DENIED as to the fifth cause of action.

*Citi*

Citi raises its own arguments in support of its Motion to Dismiss the fifth cause of action. Debtor sent separate notices of error to Citi, which he refers to as NOE #A, NOE #B, and NOE #C. Citi argues all the notices of error allegedly sent to Citi by the Debtor were untimely and therefore Citi had no duty to comply with 12 C.F.R. § 1024.35(e).

> (g) Requirements not applicable—
> (1) In general. A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that any of the following apply: . . .
> (iii) Untimely notice of error. A notice of error is delivered to the servicer more than one year after:

(A) Servicing for the mortgage loan that is the subject of the asserted error was transferred from the servicer receiving the notice of error to a transferee servicer

12 C.F.R. § 1024.35. See Wilson v. Bank of Am., N.A., 2014 U.S. Dist. LEXIS 134208 (ED Pa Sept. 24, 2014) (A servicer need not comply with the requirements of 12 C.F.R. § 1024.35(e), (f) if any of the following circumstances exist: (3) the notice of error is delivered to the servicer more than one year after servicing or the mortgage loan was transferred or the loan was discharged.). Here, the complaint alleges that the servicing of the loan was transferred to Statebridge on April 21, 2017. Debtor's first NOE #A was sent on October 2, 2018, outside the one-year limit created by 12 C.F.R. § 1024.35(g)(1)(iii)(A). Citi's Motion to Dismiss is therefore GRANTED as to the fifth Cause of Action.

## Sixth Cause of Action

The Sixth cause of action, like the fifth, alleges a failure to sufficiently respond to notices of error against all Defendants. There are no allegations against Citi in the sixth cause of action and any such claim would be outside the one-year limitation as to Citi, as described above. Citi's motion is therefore granted as to the sixth cause of action.

The sixth cause of action alleges that Statebridge "failed to accept three (3) payments from Plaintiff that confirmed to the written requirements to follow in making payments." However, in the accounting attached to the Response to NOE #1, the checks applied on June 1, 2017 and July 14, 2017 were clearly reversed and "NSF" fees were charged, which is common denotation of "non-sufficient funds." The third payment was received on July 6 and applied, with no apparent issue. Debtor has not stated a claim for violation of 12 C.F.R. § 1024.35(e) with respect to the three payments

made by Debtor as Statebridge's response complied with the requirements of RESPA. Statebridge's motion is GRANTED as to the sixth cause of action.

### Seventh cause of Action

Debtor has dismissed with prejudice all claims against Citi under cause of action seven. Debtor also admits that its allegations against Statebridge are outside the statute of limitations, but "believes that allegations exist that Statebridge's actions taken from April 2, 2018 through April 2, 2019 may violate" 15 U.S.C. §§ 1692(e)(2) and (f). Debtor therefore requests time to replead the allegations under the FDCPA. The Court is not going to rule on allegations that are not before it. The allegations in the seventh cause of action fail to state a claim due to being beyond the statute of limitations. The Motion to Dismiss is GRANTED with prejudice as to those allegations. This ruling has no effect on additional claims that Debtor may have under the FDCPA within the statute of limitations.

### Eighth Cause of Action

Debtor has agreed to dismiss the eighth cause of action with prejudice as against all Defendants.

### Ninth Cause of Action

The Ninth cause of action asserts a quiet title claim against all Defendants. Debtor voluntarily dismissed with prejudice the claim as to Citi. Debtor also stated that the claim was "premature given the claim objection." Since these pleadings were submitted, the Court ruled on the claim objection based on the same chain of title theory advanced in the ninth cause of action. The ruling on the claim objection is binding. The Motion to Dismiss is GRANTED as to Statebridge/Cascade.

### Tenth Cause of Action

Debtor's tenth cause of action objects to claim #1 filed by Cascade Funding. The Court has already ruled on Debtor's objection to claim. The tenth cause of action is therefore DISMISSED.

### Conclusion

Cascade/Statebridge's Motion to Dismiss is DENIED as to the second, third, fourth, and fifth causes of action and GRANTED as to the first, sixth, seventh, eighth, ninth, and tenth causes of action.

Citi's Motion to Dismiss is DENIED as to the first cause of action and GRANTED as to the fifth, sixth, seventh, eighth, ninth, and tenth causes of action.

###

Date: August 26, 2019

*Maureen A. Tighe*
United States Bankruptcy Judge